Ina JOHNSON, Plaintiff,

v.

AT & T TECHNOLOGIES, INC., and Jim McCoy, Individually and as Agent of AT & T Technologies, Inc., Defendants.

Civ. No. C–88–582–WS.

United States District Court,
M.D. North Carolina,
Winston–Salem Division.

Feb. 14, 1989.

**886**

David B. Freedman, Walter C. Holton, Winston–Salem, N.C., for plaintiff.

William P.H. Cary, M. Daniel McGinn, Greensboro, N.C., for AT & T Technologies, Inc.

Joel G. Bowden, Greensboro, N.C., for Jim McCoy, agent for AT & T Co.

## MEMORANDUM OPINION

BULLOCK, District Judge.

This matter is before the court on Plaintiff's motion to remand this action to the General Court of Justice, Superior Court Division, Forsyth County, North Carolina, from which Defendants removed this action on June 3, 1988. Defendants based their petition for removal on the allegation that one or more of the claims set forth in Plaintiff's complaint are preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Plaintiff, however, contends that her pleading reveals no federal cause of action and that her motion should thus be granted. For the reasons set forth below, Plaintiff's motion will be denied in part and granted in part.

### STATEMENT OF FACTS

In July of 1975, Plaintiff commenced her employment with Defendant AT & T Technologies, Inc. (hereinafter "AT & T") at its Lexington Road facility in Winston–Salem, North Carolina. At all times pertinent to this action, Plaintiff was covered by the terms of a collective bargaining agreement between AT & T and the Communication Workers of America. Defendant McCoy was at all times relevant to this complaint a nonsupervisory co-worker of Plaintiff, while Mr. W.H. Jeffers, Jr., supervised both the Plaintiff and Mr. McCoy. Mr. Mike Duehring served as the equal employment opportunity coordinator at AT & T's Lexington Road facility during the time period relevant to Plaintiff's complaint.

Plaintiff alleges that beginning in or about February of 1987 Defendant McCoy sexually harassed her at the Lexington Road facility. According to Plaintiff, such alleged harassment included physical contact and sexually suggestive remarks.

Plaintiff also contends that on at least five separate occasions between June and November of 1987 she complained to Mr. Jeffers regarding the alleged harassment by Defendant McCoy. Plaintiff states that, after she did not receive a satisfactory response from Jeffers, she approached Mr. Duehring concerning the harassment. According to the allegations in Plaintiff's complaint, Mr. Duehring also failed to take any action against McCoy.

Based on these alleged incidents, Plaintiff asserts four causes of action against Defendants, the first two against Defendant McCoy individually and the latter two against AT & T: first, intentional infliction of emotional distress predicated on McCoy's alleged sexual harassment of Plaintiff; second, assault and battery, also predicated on the alleged sexual harassment; third, intentional infliction of emotional distress and assault and battery based upon AT & T's treatment of Plaintiff's complaints against McCoy; and, finally, negligent hiring, retention, and supervision of an employee, based on AT & T's treatment of McCoy in light of Plaintiff's complaints against him. On June 3, 1988, Defendants filed a petition for removal of Plaintiff's suit to this court, contending that at least one, if not all, of Plaintiff's causes of action is governed by the collective bargaining agreement in force at AT & T and is thus preempted under Section 301. On August 4, 1988, Plaintiff filed a motion to remand this action to state court, which motion is now before this court for consideration.

### DISCUSSION

Three questions may potentially be addressed in resolving Plaintiff's motion: first, whether any of her claims are

preempted by Section 301; second, assuming that at least one, but not all, of her claims is preempted, whether this court has jurisdiction over those claims which remain state causes of action; and third, assuming this court has no jurisdiction over at least one of Plaintiff's state law claims, whether her motion should be granted in whole or only in part. With regard to the preemption issue, both the Supreme Court and various circuit courts have considered under what circumstances state law causes of action are preempted by Section 301 of the Labor Management Relations Act. While the guidelines set forth in these decisions are not always easy to apply, the prevailing standard requires courts to look at whether the state tort claim is "inextricably intertwined" with the consideration of the terms of the labor contract. *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 213, 105 S.Ct. 1904, 1912, 85 L.Ed.2d 206 (1985). If the state tort law attempts to define the meaning of the contractual relationship, then the state tort law is preempted. *Id.* Conversely, if the right involved is a "non-negotiable state-law" right independent of any right established by the contract, then it is not preempted. *Id.; accord Miller v. AT & T Network Systems*, 850 F.2d 543, 546–48 (9th Cir.1988). It is in light of this standard that Plaintiff's four causes of action will be considered.

■ In her first cause of action, Plaintiff alleges a claim of intentional infliction of emotional distress based upon alleged sexual harassment by Defendant McCoy. While North Carolina does not have a statute making such harassment illegal, N.C. Gen.Stat. § 143–422.2 declares it the policy of the state that such harassment be eradicated. Furthermore, in *Hogan v. Forsyth Country Club Co.*, 79 N.C.App. 483, 340 S.E.2d 116, *rev. denied*, 317 N.C. 334, 346 S.E.2d 140, 141 (1986), the North Carolina Court of Appeals determined that an individual could sue her employer for intentional infliction of emotional distress based upon sexual harassment in the workplace.

Defendants correctly point out that in the majority of cases addressing the issue of whether intentional infliction of emotion-al distress is preempted by Section 301, preemption has been found to exist. *See, e.g., Miller v. AT & T Network Systems*, 850 F.2d 543 (9th Cir.1988) (claim of intentional infliction of emotional distress held preempted because reasonableness of defendant's conduct must be judged in light of what the collective bargaining agreement permits); *Newberry v. Pacific Racing Ass'n*, 854 F.2d 1142 (9th Cir.1988) (intentional infliction of emotional distress claim based upon discharge held preempted by Section 301); *Willis v. Reynolds Metals Co.*, 840 F.2d 254 (4th Cir.1988) (plaintiff's claim of intentional infliction of emotional distress based on her supervisor's investigation of plaintiff's suspected role in harassing another employee held to be preempted under Section 301). While Defendants concede that had Plaintiff brought this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., her claim would not have been preempted under the Supreme Court's decision in *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), Defendants contend that as such a claim was not filed and the rights Plaintiff has asserted are indistinguishable from any other state court cause of action, her claim should be preempted under Section 301.

The court recognizes that, while North Carolina has pronounced a policy of eradicating sexual harassment, it does not have an antidiscrimination statute which might serve to confer a "non-negotiable state-law" right to be free of sexual harassment. However, the court disagrees with Defendants that the right Plaintiff has asserted is indistinguishable from any other state court cause of action. More specifically, in *Newberry* and *Reynolds*, the emotional distress claims were based upon activity which clearly involved an interpretation of the collective bargaining agreement. *See, e.g., Newberry v. Pacific Racing Ass'n*, 854 F.2d 1142 (9th Cir.1988) (claim based upon plaintiff's dismissal); *Willis v. Reynolds Metals Co.*, 840 F.2d 254 (4th Cir.1988) (claim based upon defendant company's investigation of plaintiff's alleged involvement in harassing another employee).

Here, in contrast, Plaintiff is not basing her intentional infliction of emotional distress claim on any activity, such as discharge, which would require interpreting the terms of the collective bargaining agreement. Instead, she claims that a non-supervisory co-worker's activities involving his unpermitted physical contact with her and sexually suggestive remarks toward her constitute emotional distress.

As such, the court finds this case more in line with the case of *Keehr v. Consolidated Freightways of Delaware, Inc.*, 825 F.2d 133 (7th Cir.1987), a decision not cited by Defendants, which found that there was no Section 301 preemption where plaintiff was subject to physical abuse from his supervisor as well as sexually explicit remarks about his wife. In so holding, the Seventh Circuit noted that many cases have indeed found preemption of intentional infliction of emotional distress claims, but distinguished the case before it because "the employee's claim revolved around conduct by his employer that is not even arguably sanctioned by the labor contract." *Id.* at 138 n. 6. Like the court in *Keehr*, this court finds that the claim presented by Plaintiff involves conduct that could not arguably be sanctioned by a labor contract, for such conduct would clearly offend the spirit of Title VII and public policy as stated by the North Carolina legislature.[1]

Furthermore, even in *Miller*, which held that the "farthest reaches of socially tolerable behavior" is not an independent, non-negotiable standard of behavior, the Ninth Circuit did not foreclose the possibility of preemption altogether:

> These complications do not lead to preemption of all intentional infliction of emotional distress claims. Such claims may not be preempted if the particular offending behavior has been explicitly prohibited by mandatory statute or judicial decree and the state holds violation of that rule in all circumstances sufficiently outrageous to support an emotional distress claim ... the behavior could be found sufficiently outrageous to

permit recovery without regard to whether the behavior might be permitted under the CBA.

*Miller*, 850 F.2d at 550 n. 5.

Thus, even assuming that the *Miller* court is correct in determining that the farthest reaches of socially tolerable behavior is not an independent, non-negotiable standard under the *Allis–Chalmers* test, the court finds that not even *Miller* would preempt this claim, for in its decision in *Hogan v. Forsyth Country Club Co.*, 79 N.C.App. 483, 340 S.E.2d 116, *rev. denied*, 317 N.C. 334, 346 S.E.2d 140, 141 (1986), the court of appeals noted: "No person should have to be subjected to non-consensual touchings, constant suggestive remarks, and on-going sexual harassment.... *Such conduct ... is beyond the 'bounds usually tolerated by a decent society.'*" *Id.* at 491, 340 S.E.2d at 121 (quoting Prosser, *The Law of Torts* § 12 at 56 [4th ed. 1971]) (emphasis added). By this pronouncement the court of appeals has determined that sexual harassment is beyond the bounds of permissible behavior tolerated by a decent society; hence, the state has held "violation of that rule in all circumstances sufficiently outrageous to support an emotional distress claim." *Miller*, 850 F.2d at 550 n. 5. Consequently, even under the great deference accorded federal preemption by the *Miller* decision, Plaintiff's claim of emotional distress based upon sexual harassment is not preempted by Section 301. Therefore, this cause of action will remain a state cause of action.

█ In addition to asserting that Defendant McCoy's touching of her constituted intentional infliction of emotional distress, Plaintiff also alleges that this contact constituted assault and battery. Under North Carolina law, assault involves the apprehension of harmful or offensive contact, and battery is the infliction of such contact without consent. *See Morrow v. Kings Dep't Stores, Inc.*, 57 N.C.App. 13, 19, 290

---

1. As Defendant McCoy does not fall under the statutory definition of "employer" under Title VII and was not acting as an agent of such an employer, Plaintiff would not be able to sue him directly under Title VII. *See* 42 U.S.C. § 2000e(b).

S.E.2d 732, 736 *rev. denied*, 306 N.C. 385, 294 S.E.2d 210 (1982).

Given that the alleged contact between Defendant McCoy and Plaintiff forms the basis of Plaintiff's emotional distress claim as well as her claim for assault and battery, the court finds the Plaintiff's assault and battery claim also is not preempted by Section 301. More specifically, again with reference to the decision in *Hogan,* the court finds that as the North Carolina Court of Appeals has determined such contact to be beyond the bounds usually tolerated by a decent society, the contact would also constitute an assault and battery. The Seventh Circuit's decision in *Keehr* also supports the view that unpermitted physical contact may give rise to an action in tort, without reference to the terms of a collective bargaining agreement, as conduct outside the realm of permitted activity under a collective bargaining agreement. Therefore, Plaintiff's claim of assault and battery against Defendant McCoy will also remain a state law claim.[2]

■ In her third cause of action, Plaintiff claims that Defendant AT & T Technologies, through its agents' failure to address her complaints regarding Defendant McCoy, ratified and acquiesced in McCoy's conduct toward her. According to Plaintiff, such acts and omissions by Defendant AT & T constitute intentional infliction of mental and emotional distress as well as assault and battery.

Unlike Plaintiff's claims against Defendant McCoy, the propriety of which may be determined without reference to a collective bargaining agreement, Plaintiff's claim against AT & T is based upon defendant corporation's alleged failure to respond to her complaints concerning McCoy. As such, this cause of action falls within the line of cases holding intentional infliction of emotional distress claims preempted by Section 301, for resolution of the claim

clearly involves reference to the collective bargaining agreement to determine what steps, if any, Defendant was obligated to take to address Plaintiff's complaint. *Cf. Willis v. Reynolds Metals Co.,* 840 F.2d 254 (4th Cir.1988) (question of employer's right to conduct investigations into complaints against employees held preempted by Section 301). Therefore, Plaintiff's claim of intentional infliction of emotional distress and assault and battery against Defendant AT & T is preempted.

■ Finally, Plaintiff also asserts that Defendant AT & T was negligent in hiring, retaining, and supervising Defendant McCoy. As with the intentional infliction of emotional distress and assault and battery claim against Defendant AT & T, this claim also may not be disposed of without determining whether AT & T's actions with regard to McCoy in light of Plaintiff's complaints were in accord with the corporation's rights and duties under the collective bargaining agreement. Therefore, this claim is also preempted by Section 301.

■ Having determined that two of Plaintiff's claims are preempted by Section 301, this court must now consider whether her two state causes of action are within this court's jurisdiction or whether, as claims over which this court has no jurisdiction, they must be remanded to state court pursuant to 28 U.S.C. § 1447(c). This is an issue which the parties have not considered, at least in the material filed with the court. In the situation where the state claims involve the same party or parties as the federal claim, jurisdiction is determined under the test of *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed. 2d 218 (1966), which held that if "a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding ... there is *power* in federal courts to hear the whole." *Id.* at

---

**2.** In support of preemption, Defendants also argue that, since the collective bargaining agreement relevant to his action contains both an antidiscrimination clause and a clause admonishing employees to treat one another with mutual respect, Plaintiff could have filed a grievance concerning Defendant McCoy's conduct.

However, the mere fact that Plaintiff could have filed a grievance is not conclusive on the question of preemption. Instead, the key inquiry is "whether the state tort claim being asserted purports to give meaning to the terms of the labor contract." *Keehr v. Consolidated Freightways of Delaware,* 825 F.2d 133, 137 (7th Cir.1987).

725, 86 S.Ct. at 1138 (emphasis in original). This court is satisfied that if the only inquiry were whether all of Plaintiff's claims arise from the alleged harassment involving Defendant McCoy, the court would have power under the *Gibbs* test to hear these state claims.

Here, however, Plaintiff's state and federal claims do not involve the same defendants. Although Jim McCoy is sued "individually *and as agent* of AT & T Technologies, Inc.," and Plaintiff alleges that at all times relevant to her complaint McCoy acted within the scope of his employment, Plaintiff alleges no liability against AT & T based upon any agency theory nor does she identify how McCoy's purely personal conduct fell within the scope of his employment. Therefore, the jurisdictional analysis in the present case does not end with *Gibbs*, for where the state claims are brought against a party or parties different from those involved in the federal claim, the question of whether "pendent party" jurisdiction exists must also be considered. This question is not determined by *Gibbs* but is instead governed by the decision in *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), which does not "formulate any general, all-encompassing jurisdictional rule," *id.* at 13, 96 S.Ct. at 2419, but provides guidance for ascertaining under what circumstances pendent party jurisdiction exists.

In *Aldinger*, plaintiff, who had been discharged from her job in a county treasurer's office, filed suit against county treasurer Howard and county commissioners under 42 U.S.C. § 1983, alleging that her firing violated her federal constitutional rights. At that time, a municipal corporation was not considered a "person" within the meaning of Section 1983, and thus she did not assert a Section 1983 claim against the county.[3] Instead, plaintiff attempted to name the county as a defendant on pendent claims under state law. The Supreme Court refused to allow the joinder of the pendent claim, finding that it had no juris-

diction over such claim. Writing for the majority, Justice Rehnquist found the situation significantly different from that presented in *Gibbs:*

> [I]t is one thing to authorize two parties, already present in federal court by virtue of a case over which the court has jurisdiction, to litigate in addition to their federal claim a state-law claim over which there is no independent basis of federal jurisdiction. But it is quite another thing to permit a plaintiff, who has asserted a claim against one defendant with respect to which there is federal jurisdiction, to join an entirely different defendant on the basis of a state-law claim over which there is no independent basis of federal jurisdiction, simply because [the *Gibbs* test is met].... [T]he addition of a completely new party would run counter to the well-established principle that federal courts, as opposed to state trial courts of general jurisdiction, are courts of limited jurisdiction marked out by Congress.

*Id.* at 14–15, 96 S.Ct. at 2420. Thus, the Court held that satisfying the *Gibbs* test, while necessary to establish pendent party jurisdiction, does not determine by itself whether such jurisdiction exists. Instead, the Court determined that the relevant question in the situation before it was whether "by virtue of the statutory grant of subject-matter jurisdiction, upon which petitioner's principal claim against the treasurer rests, Congress has addressed itself to the party as to whom jurisdiction pendent to the principal claim is sought." *Id.* at 15–16, 96 S.Ct. at 2421. Examining the scope of Section 1983 together with the jurisdictional statute, 28 U.S.C. § 1343, and cautioning that the "reach of the statute conferring jurisdiction should be construed in light of the scope of the cause of action as to which federal judicial power has been extended by Congress," *id.* at 17, 96 S.Ct. at 2421, the Court determined that it was without jurisdiction over plaintiff's state

---

3. *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), overruled decisions holding that a municipality is not a "person" under Section 1983. However, this determination does not affect the basic holding of *Aldinger. See Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 372 n. 12, 98 S.Ct. 2396, 2402 n. 12, 57 L.Ed.2d 274 (1978).

law claims because Congress excluded counties from liability under Section 1983. *See id.* (scope of civil action over which district courts have been given jurisdiction should not be so broadly read as to bring parties who could not be sued under the jurisdiction-conferring statute back within the court's power merely because the facts also give rise to an ordinary civil action against them under state law).

The Court continued, however, that the *Aldinger* scenario was only one of many under which pendent party jurisdiction issues could arise and that the Court was deciding the issue only with respect to a claim brought under Section 1343(a)(3) and Section 1983. Other statutory grants of jurisdiction might warrant a different result, especially those conferring exclusive federal jurisdiction, with regard to which the Court noted, "When the grant of jurisdiction to a federal court is exclusive ... the argument of judicial economy and convenience can be coupled with the additional argument that only in a federal court may all of the claims be tried together." *Id.* at 17, 96 S.Ct. at 2421-22. Also, the Court, citing *Gibbs*, added that even where pendent jurisdiction exists, it is a doctrine of discretion which a court may decline to exercise. *Id.* at 9, 96 S.Ct. at 2418 (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 [1966] ).

Thus, *Aldinger* does not provide a hard and fast rule for determining when pendent parties can be brought into a federal action. However, three guiding principles emerge from the decision. First, where federal courts have exclusive jurisdiction over the federal cause of action, such exclusivity argues strongly in favor of pendent party jurisdiction, for "the *Aldinger* decision ... strongly suggested that joinder of a pendent party might well be proper in cases in which the federal courts have exclusive jurisdiction since only in a federal court may all of the claims be tried together." 13B C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3567.2 at 157. Second, where there is not exclu-

sive jurisdiction over the federal claim, the existence of pendent jurisdiction must be determined by examining the scope of the relevant statute or statutes conferring jurisdiction over the federal claim, keeping in mind that such statutes should be construed with regard to the scope of the cause of action over which the federal judicial power may be exercised. Finally, even if pendent party jurisdiction exists, a court may nonetheless decline to exercise it based upon considerations enumerated in *Gibbs*. It is these principles which the court will apply to the present case.

First, this case may not be disposed of as one under which jurisdiction over the federal claim is exclusive, for it is well-settled that Section 301 does not confer exclusive jurisdiction on federal courts. *See Charles Dowd Box Co. v. Courtney*, 368 U.S. 502, 506–07, 82 S.Ct. 519, 522, 7 L.Ed.2d 483 (1962). Moving, then, to an analysis of the scope and language of Section 301, the court finds little guidance from existing case law. Some courts, such as the Middle District of Pennsylvania, have found that Section 301 does not negate pendent party jurisdiction over individuals. *See International Molders and Allied Workers v. United Foundries, Inc.*, 644 F.Supp. 499, 505 (M.D.Pa.1986); *Wilkes–Barre Publishing Co. v. Newspaper Guild of Wilkes–Barre, Local 120*, 504 F.Supp. 54 (M.D.Pa. 1980), *modified*, 647 F.2d 372 (3d Cir.1981), *cert. denied*, 454 U.S. 1143, 102 S.Ct. 1003, 71 L.Ed.2d 295 (1982). However, each of these decisions is of little guidance, for in *Wilkes–Barre* the supposed pendent claim brought against a union not a party to a collective bargaining agreement for tortious interference with a contract between plaintiff employer and another union was found by the Third Circuit to be preempted by Section 301. Further, in *United Foundries*, where the court exercised pendent jurisdiction over an individual sued under the Pennsylvania wage payment and collection law, the court did not identify the status of the individual within the defendant company.[4] In addition, the case also

4. Such status is important, for liability may be imposed against individuals under Section 301

involved a claim under the Employee Retirement Income Security Act, over which the court had exclusive jurisdiction.

In contrast to the Middle District of Pennsylvania, other courts have found pendent jurisdiction lacking in Section 301 cases, at least on the facts before them. For example, in *Pedro v. Teamsters Local 490*, 509 F.Supp. 83 (N.D.Cal.1981), the court found that there was no pendent jurisdiction over a common law malpractice claim against an attorney for the breach of the duty of fair representation. The court examined the issue notwithstanding Ninth Circuit opinions stating that "pendent party jurisdiction will not substitute for complete diversity or federal question." *Safeco Ins. Co. of America v. Guyton*, 692 F.2d 551, 555 (9th Cir.1982).

Likewise, in *King v. Great Atlantic and Pacific Tea Co.*, No. 77–C–1856 (N.D.Ill. May 15, 1978) (Lexis Genfed Library, Dist. File), which involved another tortious inducement of breach of contract state law claim, the court also refused to exercise pendent jurisdiction, noting that Section 301 limits jurisdiction to suits for violation of contracts between an employer and a labor organization. *Id.* at Lexis p. 11. *See also* 29 U.S.C. § 185(a). The court also added that, as the case could be brought in state court, the *Aldinger* language suggesting that pendent party jurisdiction exists where there is exclusive federal jurisdiction over the federal claim did not apply. *King*, No. 77–C–1856 at Lexis p. 12.

■ Given the language of Section 301, as well as the case law in this area, the court finds that it does not have jurisdiction of Plaintiff's state law claims. As noted by the *King* court, the language of Section 301 affirmatively limits the jurisdictional grant to suits for violation of labor contracts. Furthermore, keeping in mind that jurisdictional statutes should be construed in light of the scope of the cause of

action over which federal jurisdiction is conferred, the court finds that Section 301 does not confer jurisdiction over claims against individuals which do not involve any breach of a collective bargaining agreement. This court has determined that a resolution of Plaintiff's claims against McCoy will not require any consideration of the collective bargaining agreement. In essence, to exercise pendent jurisdiction over Plaintiff's state law claims would be to bring a party who could not be sued directly under Section 301 back within this court's power merely because the facts give rise to an ordinary civil action against the party, a result which *Aldinger* clearly rejected.[5]

■ As this court does not have jurisdiction over Plaintiff's two state law causes of action, the final question before this court is whether only these two causes are to be remanded to state court or whether the entire case is to be remanded. In *Adolph Coors Co. v. Sickler*, 608 F.Supp. 1417 (C.D.Cal.1985), the court gave a full discussion to the difficult issue of whether partial or total remand would be appropriate. In support of total remand, the court first noted that the express language of the removal statute, 28 U.S.C. § 1441(b), states that removal is proper only if the district court has original jurisdiction over the "civil action" and that many courts have interpreted the phrase "civil action" to mean the entire action. *Id.* at 1425. Also, the court noted that Congress has authorized partial removal under certain circumstances, thus indicating that if it had intended partial removal to exist in cases brought under Section 301 it could easily have so stated. Finally, the court added that total remand would promote judicial efficiency and economy, for otherwise a plaintiff in a pendent party situation would be incapable of litigating his claims in a single forum so long

---

provided that they acted as "alter egos" of the defendant company or union. *See United Foundries*, 644 F.Supp. at 505.

5. The court recognizes that individuals may be sued under Section 301; however, liability may be imposed against such individuals only if the

individual acted as an alter ego of the defendant employer or union. *See International Molders and Allied Workers v. United Foundries, Inc.*, 644 F.Supp. 499 (M.D.Pa.1986). McCoy's acts in the present case were not undertaken as an alter ego of AT & T.

as the defendant desired to remove federal question claims. *Id.* at 1426.

However, the court also discussed the arguments in support of partial remand, finding a "compelling" argument for partial remand in the fact that if total remand were the rule "a plaintiff wishing to prevent removal of his case could do so by the simple device of joining with his federal claim a related state claim against another defendant." *Id.* While recognizing that "partial remand will achieve an unsatisfactory result in this matter," *id.* at 1427, the court also stated that total remand would also be unsatisfactory. Forced to "choose the lesser of two evils," *id.*, the court determined that partial remand would be the better option, stating that it was "primarily influenced by the fact that a contrary decision ... would confer upon a plaintiff possessing a federal question claim the power to select a forum to suit his tactical objectives. The court fears that such power would be too likely to be abused." *Id.*

The *Coors* decision is in line with an earlier decision from the First Circuit, *Charles D. Bonanno Linen Serv., Inc. v. McCarthy,* 708 F.2d 1 (1st Cir.), *cert. denied,* 464 U.S. 936, 104 S.Ct. 346, 78 L.Ed. 2d 312 (1983), which found that as it is "well established ... that the removal statute embraces the same 'class of cases' as does the original jurisdiction statute," *id.* at 11, it is proper to remove the claims over which federal jurisdiction exists even if state claims must be left behind. While these two cases do not provide a wealth of support for partial remand, this court has been unable to locate any decisions to the contrary and is also mindful of the danger that, given total remand, plaintiffs may avoid federal court merely by appending a related state law claim against another defendant to a lawsuit. Although the court is aware that partial remand is not the most economical way to litigate this case both in terms of time and expense, the court agrees with the Central District of California that partial remand is the lesser of two evils.

An order in accordance with this memorandum opinion shall be entered contemporaneously herewith.

## ORDER

BULLOCK, District Judge.

For the reasons stated in the memorandum opinion filed contemporaneously herewith,

IT IS HEREBY ORDERED that Plaintiff's motion to remand be, and the same hereby is, GRANTED with regard to her claims against Defendant Jim McCoy, individually; and

IT IS FURTHER ORDERED that Plaintiff's motion to remand be, and the same hereby is, DENIED with regard to her claims against AT & T Technologies, Inc.