Lita M. **FILIPPO**, Plaintiff–Appellant,

v.

**NORTHERN INDIANA PUBLIC SERVICE CORPORATION, INC., and United Steelworkers of America, Local 13796, Defendants–Appellees.**

No. 97–1541.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 7, 1997.

Decided April 10, 1998.

Michael J. Foley (argued), Foley & Foley, Chicago, IL, for Lita M. Filippo.

Lisa A. Weiland, Robert D. Campbell (argued), Schiff, Hardin & Waite, Chicago, IL, for Northern Indiana Public Service Co.

Daniel M. Kovalik, David I. Goldman (argued), United Steelworkers of America, Asst. Gen. Counsel, Pittsburgh, PA, for Local 31–13796 United Steelworkers of America.

Before POSNER, Chief Judge, and EASTERBROOK and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Lita Filippo brought this action against her employer, Northern Indiana Public Service Corporation ("NIPSCO"), and her union, United Steelworkers of America, AFL–CIO–CLC, Local Union 13796 ("Union"). Her complaint included a claim under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and a claim that NIPSCO's actions constituted intentional infliction of emotional distress under Indiana law. Both parties consented to trial before a magistrate. To prevail on her LMRA claim, Filippo must show that the Union breached its duty of fair representation. The magistrate determined that Filippo could not make this showing and granted summary judgment on this count to NIPSCO and the Union. The Magistrate also granted summary judgment to NIPSCO and the Union on the state-law claim, finding that the LMRA displaced the state law in this area because the tort would require interpretation of the Collective Bargaining Agreement ("CBA") in force between NIPSCO and the Union. This appeal followed.

Because we find that Filippo cannot establish that the Union breached its duty of fair representation and we believe the LMRA displaces Indiana law on intentional infliction of emotional distress under the circumstances of this case, we affirm the district court's grant of summary judgment.

## I. HISTORY

NIPSCO employs Filippo as a customer service representative. For over thirty years, the Union has served as the bargaining agent for NIPSCO employees, including customer service representatives. Filippo is a member of the Union.

From December 1993 until April 1994, Filippo served as a Union Steward under Local Union President Debbie Birkholtz. In April 1994, Filippo ran against Birkholtz for President of the Local Union but lost the election. After Birkholtz's reelection, she removed Filippo from her position as a Union Steward.

The CBA in effect for all times relevant to this lawsuit covered the period from June 1, 1993 to May 31, 1997. As a member of the Union Filippo is covered by this CBA, which governs the procedures for resolution of employee grievances. The grievance process proceeds as follows: First, the employee discusses the matter with her supervisor in a "pre-grievance" step. If the matter is not resolved to the employee's satisfaction, she can pursue the matter to "Step 1." In Step 1, the employee completes a Grievance Form and presents it to her supervisor. The supervisor signs the Grievance Form, acknowledging the request for a grievance hearing. The supervisor then arranges for a grievance hearing as soon as practicable. In attendance at the grievance hearing are the employee, her Steward, and a Grievance Committee person. If the grievance is not resolved in Step 1, the employee can request to proceed to Step 2 by submitting a particularized account of her grievance on the Union's Grievance Report Form to the Local Union Grievance Committee. The Union then evaluates the grievance, and if the Union intends to pursue the complaint, it must notify NIPSCO's Manager of Labor Relations in writing. Upon such notification, NIPSCO arranges for a Step 2 Grievance Hearing. At the Step 2 hearing, NIPSCO is represented by the Manager of Labor Relations, while the Union is represented by the International Staff Representative, the Local Union President, and the Local Union Grievance Committee Chairperson. If the grievance is not resolved at Step 2, the grievance may be submitted to arbitration by the International Staff Representative. Only the International Staff Representative has the authority to appeal a grievance to arbitration.

Filippo filed eight grievances between February and November of 1994. These eight grievances are the subject of Filippo's complaint that NIPSCO violated the CBA and that the Union violated its duty of fair representation.

Filippo's first grievance alleged that supervisors William Vagenas and Carol Kane were oversupervising her because of her status as a Union Steward and because she was a candidate for Local Union President. Filippo complained specifically of a meeting with Kane in which Kane reprimanded Filippo for being away from her desk too often. This grievance was pursued through Step 2. In its investigation, the Union spoke with Filippo, Vagenas, and Kane. The Union resolved the grievance in Step 2 based on NIPSCO's representation that Filippo's file contained no record of reprimand. Because the supervisors did not record a formal reprimand, the Union concluded that Filippo suffered no injury. Filippo admits that she was not disciplined in any way as a result of her meeting with Kane, but claims the Union should have interviewed Maria Callas, an employee Filippo identified as a witness. Filippo also complains to us that the Union did not communicate the resolution of this grievance to her until three months after the Step 2 hearing.

The second grievance listed several complaints, including retaliatory discipline and harassment. After the Step 1 hearing, Filippo did not complete the necessary paperwork to take her grievance to Step 2. Union Steward Velma Hawkins advised Filippo that her paperwork was not complete, yet Filippo chose not to supplement her filing. The Union therefore did not pursue this grievance further.

Filippo's third and eighth grievances complained about NIPSCO establishing a standard that required customer service representatives to be available to take telephone calls from customers for at least 55% of their work time. These grievances were not resolved in Step 1 or Step 2. Several other employees submitted grievances on this issue, and the International Union elected to combine the complaints and take them to arbitration. The Union settled all the grievances dealing with the 55% standard by reserving the right to challenge the standard if and when any of the employees were disciplined for failing to meet it.

The fourth and sixth grievances concerned written warnings Filippo received regarding her absences. NIPSCO has an attendance policy which includes a procedure for employees to request a "special review" of absences. If an employee seeks such a review and extenuating circumstances exist, the ab-

sence is not counted against the employee. The Union encourages employees to use the special review process because it often eliminates the need for pursuing a grievance. At Filippo's Step 2 hearing, the Union requested that she use the special review process. Filippo refused. The Union settled the grievances by receiving assurances from NIPSCO that NIPSCO and the Union would review the absences should Filippo later receive discipline for attendance problems. Filippo had not yet been disciplined for absenteeism; accordingly her grievances were suspended unless and until she is actually injured.

Filippo's fifth grievance alleged that she had been harassed by her supervisor. The grievance was not resolved in Step 1. While Filippo claims she "appealed the denial," the Union asserts that Filippo did not complete the necessary paperwork to take the grievance to Step 2. The Union did not pursue this grievance further.

In her seventh grievance Filippo complained that she should have been allowed Union representation when an outside consultant critiqued her customer service calls. The Union took the grievance to Step 2 and resolved it on the grounds that no documentation from the evaluation was placed in Filippo's files and that the evaluation was solely for training purposes.

On the basis of the handling of these grievances, Filippo filed suit in the District Court for the Northern District of Indiana alleging violations of the LMRA and intentional infliction of emotional distress. The parties consented to trial before a magistrate. The magistrate granted the defendants' motion for summary judgment on all counts.

## II. ANALYSIS

### A. *Summary Judgment Standard*

We review a district court's grant of summary judgement *de novo*, drawing our own conclusions of law and fact from the record before us. *See Thiele v. Norfolk & Western Ry. Co.*, 68 F.3d 179, 181 (7th Cir.1995). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). In determining whether a genuine issue of material fact exists, courts must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). However, neither "the mere existence of *some* alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, 106 S.Ct. at 2509–10, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986), is sufficient to defeat a motion for summary judgment.

### B. *LMRA Claim*

Section 301 of the LMRA permits an employee to file suit in the district court for violation of a collective bargaining agreement between the employee's union and the employer. When an employer and union are parties to a collective bargaining agreement which contains procedures for resolving employment disputes, however, an employee must establish that the union breached its duty of fair representation to maintain an actionable § 301 claim against the employer. *See DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 163–64, 103 S.Ct. 2281, 2289–90, 76 L.Ed.2d 476 (1983); *Vaca v. Sipes*, 386 U.S. 171, 186, 87 S.Ct. 903, 914–15, 17 L.Ed.2d 842 (1967); *Grant v. Burlington Indus.*, 832 F.2d 76, 81 (7th Cir.1987) ("[A] plaintiff must normally prove that a union has breached its duty of fair representation in order to prevail in a section 301 action against his or her employer."). A union breaches its duty of fair representation when its actions are arbitrary, discriminatory, or in bad faith. *See Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67, 111 S.Ct. 1127, 1129–30, 113 L.Ed.2d 51 (1991); *Vaca*, 386 U.S. at 190, 87 S.Ct. at 916–17. "This is a tripartite standard; a court should

look to each element when determining whether a union violated its duty." *Griffin v. Air Line Pilots Ass'n, Int'l,* 32 F.3d 1079, 1083 (7th Cir.1994). The standard is phrased in the alternative; to defeat a motion for summary judgment, plaintiff must proffer evidence supporting at least one of these elements. *See id.*

■ A union's actions are arbitrary "only if . . . the union's behavior is so far outside a 'wide range of reasonableness,' *Ford Motor Co. v. Huffman,* 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953), as to be irrational." *O'Neill,* 499 U.S. at 67, 111 S.Ct. at 1129–30. We have previously held that, in the context of pursuing and resolving grievances, "[t]he union must provide 'some minimal investigation of employee grievances,' but the thoroughness of this investigation depends on the particular case, and 'only an egregious disregard for union members' rights constitutes a breach of the union's duty.'" *Garcia v. Zenith Elecs. Corp.,* 58 F.3d 1171, 1176 (7th Cir.1995) (quoting *Castelli v. Douglas Aircraft Co.,* 752 F.2d 1480, 1483 (9th Cir.1985)).

■ Our review of the record does not suggest that the Union acted arbitrarily in its pursuit or resolution of Filippo's grievances. Grievances one, three and eight, four and six, and seven were all resolved on the basis that Filippo suffered no adverse employment action, and no record of the underlying incident was placed in her file. With respect to grievances three and eight and four and six, the Union settled the grievances on the specific condition that the underlying issues (the 55% standard and absences) would be revisited if and when Filippo was disciplined in regard to either issue. The Union did not pursue grievance two to Step 2 because Filippo failed to complete the required form. The Union cannot be faulted for requiring that its own procedures be followed.

■ The facts surrounding grievance five are murky, but we do not believe they present a genuine issue of material fact sufficient to defeat summary judgment. Filippo's brief states that after the denial of the grievance at Step 1, she "appealed the denial at Step 2[but] Defendant Local [Union] failed to act on the grievance." Appellant's Br. at 10. For support, Filippo cites her affidavit. In her affidavit, Filippo states, "[a]lthough Affiant appealed the denial to Step 2 the Local failed to act on the grievance." Filippo Aff. at para. 41. To proceed with a Step 2 hearing under the CBA, Filippo must "reduce the grievance to writing on the Union's Grievance Report Form." CBA at 7. It is not sufficient to simply request a Step 2 hearing after a Step 1 hearing; the Union will not pursue a grievance unless the employee completes the Grievance Report Form. Filippo fails to state what steps she took to "appeal the denial," and therefore leaves open the question of whether she filed the required Grievance Report Form. The Union vehemently asserts that Filippo did not file the required Grievance Report Form, citing the Union Grievance Committee Chairperson's affidavit. While the record contains completed Grievance Report Forms for other Step 2 hearings, we failed to find such a completed form for grievance five. Given the generalized nature of Filippo's assertion that she "appealed the denial" and the complete lack of evidence that she filed the necessary form, we are not inclined to find that she created a genuine issue of material fact sufficient to defeat summary judgment.

■ We also find no evidence to suggest that the Union acted in a discriminatory way or in bad faith. Filippo has offered no evidence that her grievances were treated any differently from any other employee's similar grievances. Indeed, Filippo's only evidence suggesting discrimination is that it took two years for her grievances on the 55% standard to proceed to arbitration, while most grievances are addressed in arbitration within a year and a half. We find it interesting that Filippo's grievances on the 55% standard were consolidated with similar grievances filed by other employees, and all these grievances were addressed at the same time during the same arbitration. Far from suggesting that her claim was treated differently from others, these facts suggest that Filippo received exactly the same treatment as other employees.

Filippo contends that the Union retaliated against her for running for Local Union President, and this retaliation included acting in bad faith in pursuing her grievances. Again, we find ourselves lacking evidence to support Filippo's claim. Filippo points to the fact that Robert Cassell, a member of NIPSCO's management, stated that he believes Filippo is prone to distort reality and is generally a difficult person to deal with when it comes to disagreements. We are at a loss to discern how this statement from a NIPSCO employee could be probative on the Union's pursuit of Filippo's grievances. While Cassell testified in his deposition that he believes this characterization is the "consensus of opinion" about Filippo, such a statement is not sufficient to suggest that the members of the Union responsible for decisions on Filippo's grievances acted in bad faith. Filippo also points us to Debbie Birkholtz's statement that she believes Filippo is a backstabber. This is a statement of Birkholtz's opinion, and Filippo has provided us with no evidence linking Birkholtz's personal feelings to the Union's handling of her grievances. Filippo's assertions do not create a genuine issue of material fact with respect to the Union's representation.

Based on the evidence Filippo presents, she cannot avoid summary judgment. The Union acted reasonably in pursuing and settling each of Filippo's grievances, and we find no evidence of discrimination or bad faith. Because Filippo cannot show that the Union breached its duty of fair representation she cannot make out a § 301 claim against NIPSCO, and the district court properly entered summary judgment in favor of the defendants.

### C. Intentional Infliction of Emotional Distress

Filippo contends that NIPSCO's and the Union's actions constitute intentional infliction of emotional distress under Indiana law. Indiana only recently recognized this tort. See Cullison v. Medley, 570 N.E.2d 27,

31 (Ind.1991). The Indiana Supreme Court described the tort as " 'extreme and outrageous conduct [which] intentionally or recklessly causes severe emotional distress to another.' " Id. (quoting Restatement (Second) of Torts § 46 (1965)).

Because this is a state-law claim, we must determine whether the LMRA displaces it. The LMRA displaces a state-law claim if resolution of the claim "requires the interpretation of a collective-bargaining agreement." Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 413, 108 S.Ct. 1877, 1885, 100 L.Ed.2d 410 (1988). To determine whether NIPSCO's or the Union's behavior was "extreme or outrageous" would necessarily require an interpretation of the CBA. With regard to NIPSCO, a court would have to look to the CBA to determine whether NIPSCO managers were "oversupervising" Filippo, whether the managers had the right to warn her about absenteeism, whether the 55% policy was sanctioned by the CBA, and whether training by an outside consultant without Union representation was prohibited. The Union's approach to Filippo's grievances would also be subject to scrutiny, which would require the court to compare the Union's actions with those outlined in the CBA. Even Filippo concedes that the actions at issue implicate the CBA. See Appellant's Br. at 15 ("Plaintiff's Complaint . . . encompasses a pattern of retaliatory conduct by both Defendants both within and outside the boundaries of the Collective Bargaining Agreement."). Because resolution of the state-law claim would require interpretation of the CBA, the LMRA displaces the state law in this case.

Our decision today is in accord with our previous decision construing Illinois law in Douglas v. American Info. Techs. Corp., 877 F.2d 565 (7th Cir.1989).[1] In Douglas, the plaintiff sought damages for intentional infliction of emotional distress by her employer. The plaintiff alleged, inter alia, that she was subjected to "constant harassment," given unjustified warnings, subjected to the or-

---

1. While Douglas involved Illinois law, we note that Illinois, like Indiana, follows the Restatement definition for the tort of intentional infliction of emotional distress. See McGrath v. Fa-

hey, 126 Ill.2d 78, 127 Ill.Dec. 724, 727, 533 N.E.2d 806, 809 (1988); Public Fin. Corp. v. Davis, 66 Ill.2d 85, 4 Ill.Dec. 652, 653–55, 360 N.E.2d 765, 767 (1976).

deal of filing numerous grievances to protect her rights, and was subjected to excessive scrutiny of her work. *Id.* at 567–68. We held that

> [b]ecause Ms. Douglas' intentional infliction of emotional distress claim consists of allegedly wrongful acts directly related to the terms and conditions of her employment, resolution of her claim will be substantially dependent on an analysis of the terms of the collective bargaining agreement under which she is employed. A court will be required to determine whether her employer's conduct was authorized by the explicit or implicit terms of the agreement. Therefore, we hold that Ms. Douglas' state-law claim is preempted and must be pursued as a section 301 claim.

*Id.* at 573. For similar reasons, we hold that Filippo's claim for intentional infliction of emotional distress under Indiana law is displaced by the LMRA.[2]

### D. *Waiver*

Although we addressed the merits in this case, the condition of Filippo's brief nearly required us to dismiss her arguments as waived. We have warned litigants that we will dismiss an appeal that does not contain an identifiable argument or that fails to specify any error in the district court's decision. *See Brooks v. Allison Div. of Gen. Motors Corp.*, 874 F.2d 489, 490 (7th Cir.1989). While Filippo does allege that "[t]he Court below inappropriately made factual findings about the arbitrary and discriminatory nature of Defendants' actions and whether the Defendants' actions intentionally inflicted severe emotional distress," and that "[t]he court below erred in accepting the Defendants' version of events, in preference to the Plaintiff's," Appellant's Br. at 13, 15, she fails to elaborate on how the court erred. However, Filippo's brief is not entirely devoid of citation or factual reference, and reading the statement of facts together with the three

pages of argument, we were able to identify Filippo's contentions. We therefore addressed the merits. Filippo's brief must stand as the irreducible minimum, however, and we caution counsel that in the future, briefs must "contain the contentions of the appellant on the issues presented, and the reasons therefor, with citations to the authorities, statutes, and parts of the record relied on," Fed. R.App. P. 28(a)(6), as well as specifying error in the district court's decision.

For the above reasons, we AFFIRM the district court's grant of summary judgment in favor of NIPSCO and the Union.

---

2. Filippo cites *Keehr v. Consolidated Freightways, Inc.*, 825 F.2d 133 (7th Cir.1987), in support of her argument that her state-law claim is not displaced by the LMRA. In *Keehr* the plaintiff claimed emotional distress resulting from a vulgar and sexually explicit remark about his wife made by a supervisor. *See id.* at 134. This behavior "is not even arguably sanctioned by the labor contract," *id.* at 138 n. 6, and therefore we found that the state-law claim was not displaced by the LMRA. Filippo's claim, in contrast, does involve behavior central to the employment relationship and requires interpretation of the CBA. *Keehr* is therefore inapposite.