In the

# United States Court of Appeals
### For the Seventh Circuit

———————

Nos. 03-4026 & 03-4027

ROY G. NELSON, CLARENCE ALSIP,
CHARLES ANDREWS, et al.,

*Plaintiffs-Appellants,*
*Cross-Appellees,*

*v.*


JOHN STEWART, DONALD R. SAY, et al.,

*Defendants-Appellees,*
*Cross-Appellants,*

and

UNITED STEELWORKERS OF AMERICA,
LOCAL UNION #12213,

*Defendant-Appellee.*

———————

Appeals from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 00 C 1734—**Richard L. Young**, *Judge.*

———————

ARGUED JANUARY 21, 2005—DECIDED AUGUST 29, 2005

———————


Before RIPPLE, WOOD and SYKES, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Retired bargaining unit workers
("retirees") of Indiana Steel and Wire Company ("ISW")

filed this state common law action in Indiana state court
against the United Steelworkers of America, Local Union
12213 and the United Steelworkers of America, AFL-CIO
(collectively, "Union"), as well as individual union members
("individual defendants"). The Union removed the case to
the district court. The district court determined that removal
was proper because the claims against the Union presented
a federal question. *See* 28 U.S.C. § 1441(a). It later granted
summary judgment in favor of the Union on statute of
limitations grounds. The district court then exercised its
discretion to remand to state court the retirees' claims
against the individual defendants, over which the court
believed it had only supplemental jurisdiction. The parties
have cross-appealed. For the reasons set forth in the follow-
ing opinion, we now affirm in part, and reverse and remand
in part the judgment of the district court.

# I

# BACKGROUND

## A. Facts

In March 1998, the Union negotiated a collective bar-
gaining agreement on behalf of the production employees
at ISW's Muncie, Indiana plant. Three months later, ISW
filed a petition for relief under Chapter 11 of the Bankruptcy
Code. The Union and ISW then entered into negotiations for
the modification of the March 1998 collective bargaining
agreement. The parties sought to achieve sufficient cost
savings to enable ISW to continue operating and to reorga-
nize. Briefly, through the course of the bankruptcy process,
the Union and the individual defendants repeatedly assured
the retirees that their health insurance benefits were not a
topic of negotiation and that the retirees did not need their

own representation in the negotiations with ISW.

On August 7, 1998, ISW filed a motion, in accordance with 11 U.S.C. §§ 1113 and 1114, in the bankruptcy court seeking permission to reject the March 1998 collective bargaining agreement and to modify the contract benefits of the retired bargaining unit members. On August 24, 1998, Durrell Corporation ("Durrell") made an offer to purchase all of ISW's assets subject to the approval of the bankruptcy court. The Union pursued collective bargaining negotiations with Durrell in the event that Durrell successfully purchased the assets of ISW. In September, the local union membership ratified ISW's final proposal to modify the March 1998 collective bargaining agreement. The new agreement terminated the health coverage of the retirees and modified other retiree benefits. At this time, the local union membership also ratified the final purchase offer by Durrell. On October 12, 1998, the bankruptcy court issued an order approving ISW's and the Union's agreement to reject the March 1998 collective bargaining agreement and to implement the modified contract. On October 23, 1998, the bankruptcy court approved the sale of ISW to Durrell. The final contract of sale did not provide for retiree medical coverage.

After the retirees learned that they had lost their health care benefits, they filed suit against the Union and the individual defendants in state court; the suit alleged negligence, misrepresentation and promissory estoppel.

### B.  District Court Proceedings

The Union removed this action to federal court, and the retirees filed a motion to remand. The district court determined that the retirees' state-law claims against the Union were subject to complete preemption because any purported

duty of the Union to represent the retirees during ISW's bankruptcy process was derived from and was dependent on federal law. Specifically, § 1114 of the Bankruptcy Code provides:

> A labor organization shall be, for purposes of this section, the authorized representative of those persons receiving any retiree benefits covered by any collective bargaining agreement to which that labor organization is a signatory, unless (A) such labor organization elects not to serve as the authorized representative of such persons, or (B) the court, upon a motion by any party in interest, after notice and hearing, determines that different representation of such persons is appropriate.

11 U.S.C. § 1114(c)(1). The district court perceived no real difference between the Union's role as the retirees' statutory representative in this case and a union's duty of fair representation when it acts as the exclusive representative of its bargaining unit members in collective bargaining agreements under section 301 of the Labor Management Relations Act ("LMRA"), 15 U.S.C. § 185. Therefore, the district court applied cases in which courts have held that fair duty of representation claims are federal in character, even if pleaded under state law, because they fall within the field of law wholly occupied by the national labor laws. *See BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers of America, IAMAW, Dist. Lodge 4*, 132 F.3d 824 (1st Cir. 1997). The district court accordingly held that it had original jurisdiction over the retirees' claims against the Union and that removal was appropriate.

The district court then granted summary judgment in favor of the Union on the ground that the retirees' claims were barred by the federal statute of limitations.

The district court then turned to the claims against the individual defendants. It determined that it had supplemental jurisdiction over the claims because they were part of the same case or controversy as the claims against the Union. *See* 28 U.S.C. § 1367. The court initially decided to exercise its supplemental jurisdiction, and it ordered supplemental briefs on the issue of the individual defendants' immunity from suit. Upon the parties' briefs, the district court concluded that case law holding that individual union members are immune from liability for actions taken in relation to a collective bargaining agreement covered by section 301 of the LMRA did not extend to actions individual union members take in relation to negotiations under 11 U.S.C. § 1114. After so ruling the district court decided in the same order that, because it had dismissed all claims over which it had original jurisdiction, it would not continue to exercise jurisdiction over the retirees' state-law claims against the individual defendants. Accordingly, the district court remanded those claims to the state court.

## II

## DISCUSSION

### A.  Standard of Review

We review a district court's grant or denial of summary judgment de novo. *Tutman v. WBBM-TV, Inc./CBS, Inc.*, 209 F.3d 1044, 1048 (7th Cir. 2000). In doing so, we construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *Id.* Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## B.  General Removal and Preemption Standards

A defendant may remove any civil action filed in state court over which federal district courts have original jurisdiction. 28 U.S.C. § 1441;[1] *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Federal district courts, in turn, have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Ordinarily, a court must determine the presence or absence of a federal question by examining only the plaintiff's well-pleaded complaint. *Caterpillar Inc.*, 482 U.S. at 392. This rule requires that a federal question appear on the face of the complaint. *Bastien v. AT&T Wireless Servs., Inc.*, 205 F.3d 983, 986 (7th Cir. 2000) (citing *Franchise Tax Bd.*

---

[1]  Section 1441 states in relevant part:

Actions removable generally

> (a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. . . .

> (b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. . . .

28 U.S.C. § 1441(a)-(b).

*of California v. Constr. Laborers Vacation Trust for S. California*, 463 U.S. 1, 10 (1983)). The plaintiff, as the master of his own complaint, may avoid federal jurisdiction by pleading only state-law claims. *Id*. Most often, a defendant raises federal preemption as a defense to a state-law action. *Caterpillar Inc.*, 482 U.S. at 392. A case may not be removed, however, based on a federal defense, "even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Id.*; *see Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003).

"On occasion, the Court has concluded that the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar Inc.*, 482 U.S. at 393 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). This "independent corollary" to the well-pleaded complaint rule is known as the "complete preemption" doctrine. *Id*. "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id.*; *see Beneficial Nat'l Bank*, 539 U.S. at 8 ("When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law."). In such situations, the federal statute "not only pre-empt[s] state law but also authorize[s] removal of actions that sought relief only under state law." *Beneficial Nat'l Bank*, 539 U.S. at 6-7.

## B. Complete Preemption

**1.**

The Supreme Court has applied the complete preemption doctrine in cases that raise claims preempted by section 301 of the LMRA. *Caterpillar Inc.*, 482 U.S. at 393. Section 301 provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). Section 301 "governs claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective bargaining agreement.' "[2] *Caterpillar Inc.*, 482 U.S. at 394 (quoting *Elec. Workers v. Hechler*, 481 U.S. 851, 859 n.3 (1987), and citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985)); *see also Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405-06 (1988).

In *Avco v. Aero Lodge No. 735, International Association of Machinists & Aerospace Workers*, 390 U.S. 557 (1968), the plaintiff filed suit in state court alleging that it had a valid contract with the union and seeking to enjoin the union

---

[2] The retirees' claims did not directly implicate section 301 because they were filed against the Union, not the employer. *See Wegscheid v. Local Union 2911, Int'l Union, United Auto., Aerospace & Agric. Implement Workers of America*, 117 F.3d 986, 988 (7th Cir. 1997).

from violating the agreement through its participation in, and sanction of, work stoppages. More recently, the Court explained its approach in *Avco* to section 301 preemption:

> The Court of Appeals held . . . and we affirmed . . . that the petitioner's action "arose under" § 301, and thus could be removed to federal court, although the petitioner had undoubtedly pleaded an adequate claim for relief under the state law of contracts and had sought a remedy *only* under state law. The necessary ground of decision was that the pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action "for violation of contracts between an employer and a labor organization." Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301. *Avco* stands for the proposition that if a federal cause of action completely pre-empts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily "arises under" federal law.

*Beneficial Nat'l Bank*, 539 U.S. at 7 (quoting *Franchise Tax Bd. of California*, 463 U.S. at 23-24). The Court has decided that section 301 "not only provides federal-court jurisdiction over controversies involving collective-bargaining agreements, but also 'authorizes federal courts to fashion a body of federal law' for the enforcement of these collective bargaining agreements." *Lingle*, 486 U.S. at 403 (quoting *Textile Workers v. Lincoln Mills of Alabama*, 353 U.S. 448 (1957)).

The Court has discussed the necessity of recognizing that section 301 effects complete preemption:

> The dimensions of § 301 require the conclusion that

substantive principles of federal labor law must be paramount in the area covered by the statute. Comprehensiveness is inherent in the process by which the law is to be formulated under the mandate of *Lincoln Mills*, requiring issues raised in suits of a kind covered by § 301 to be decided according to the precepts of federal labor policy.

More important, the subject matter of § 301(a) "is peculiarly one that calls for uniform law." . . . The possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements. Because neither party could be certain of the rights which it had obtained or conceded, the process of negotiating an agreement would be made immeasurably more difficult by the necessity of trying to formulate contract provisions in such a way as to contain the same meaning under two or more systems of law which might someday be invoked in enforcing the contract. Once the collective bargain was made, the possibility of conflicting substantive interpretation under competing legal systems would tend to stimulate and prolong disputes as to its interpretation. Indeed, the existence of possibly conflicting legal concepts might substantially impede the parties' willingness to agree to contract terms providing for final arbitral or judicial resolution of disputes.

The importance of the area which would be affected by separate systems of substantive law makes the need for a single body of federal law particularly compelling. The ordering and adjusting of competing interests through a process of free and voluntary

collective bargaining is the keystone of the federal
scheme to promote industrial peace. State law which
frustrates the effort of Congress to stimulate the smooth
functioning of that process thus strikes at the very core
of federal labor policy. With due regard to the many
factors which bear upon competing state and federal
interests in this area, . . . we cannot help but conclude
that in enacting § 301 Congress intended doctrines of
federal labor law uniformly to prevail over inconsistent
local rules.

(*Teamsters, Chauffeurs, Warehousemen & Helpers of America v. Lucas Flour Co.*, 369 U.S. 95, 103-04 (1962) (quoted in *Lingle*, 486 U.S. at 404 n.3 (citations omitted; footnote omitted))).[3]

Closely related to claims implicating section 301, the

---

[3] The Court also has held that section 502(a) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, has the same preemptive force as section 301 of the LMRA. *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 7 (2003); *see also Rice v. Panchal*, 65 F.3d 637, 643 (7th Cir. 1995). The Court has explained that the statute's text contains a specific preemption provision and that its "jurisdiction subsection, § 502(f), used language similar to the statutory language construed in *Avco* [*Corporation v. Aero Lodge No. 735, International Association of Machinists & Aerospace Workers*, 390 U.S. 557, 560 (1968)], thereby indicating that the two statutes should be construed in the same way." *Beneficial Nat'l Bank*, 539 U.S. at 7-8 (citing *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). Furthermore, the Court has said that the legislative history of ERISA clearly evinces Congress' intent to render section 502(a)(1)(B) suits filed by plan participants into federal questions, "in similar fashion to those brought under section 301 of the [LMRA]." *Id*. at 8.

Court long has implied from a labor union's status as the exclusive representative of workers in its bargaining unit, *see* 29 U.S.C. § 159(a),[4] a concomitant duty of the union to represent its members fairly. *Vaca v. Sipes*, 386 U.S. 171, 177 (1967). This duty of fair representation requires the union "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Id*.

In *Vaca*, the plaintiff, who claimed that he was discharged from his employment in violation of the collective bargaining agreement, filed suit in state court against the union alleging that it arbitrarily had refused to take his grievance with the employer to arbitration. The Court in *Vaca* determined that the National Labor Relations Board did not have exclusive jurisdiction over what essentially was a claim that the union had breached its duty of fair representation. *See Vaca*, 386 U.S. at 177-92. Notably, the Court based this

---

[4] Section 9(a) of the National Labor Relations Act ("NLRA") provides in relevant part:

> Representatives designated or selected for purposes of collective bargaining by the majority of employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment.

29 U.S.C. § 159(a). In this case, the Union had no duty under section 9(a) to represent the retirees in the collective bargaining with ISW or Durrell because retired workers are not members of the bargaining unit. *See Allied Chem. & Alkali Workers of America, Local Union No. 1 v. Pittsburg Plate Glass Co., Chem. Div.*, 404 U.S. 157, 181 n.20 (1971).

conclusion on many considerations, including

> some intensely practical considerations which fore-
> close pre-emption of judicial cognizance of fair repre-
> sentation duty suits, considerations which emerge from
> the intricate relationship between the duty of fair
> representation and the enforcement of collective bar-
> gaining contracts. For the fact is that the question
> of whether a union has breached its duty of fair repre-
> sentation will in many cases be a critical issue in a suit
> under L.M.R.A. § 301 charging an employer with a
> breach of contract.

*Id*. at 183.

Some of our sister courts of appeals have concluded that the statutory duty of fair representation has, in the context of removal, the same preemptive force as does section 301.[5] In *Richardson v. United Steelworkers of Amer-ica*, 864 F.2d 1162 (5th Cir. 1989), the Fifth Circuit concluded:

> *Avco* recognized removal based on section 301's com-
> plete, displacing preemption of state law because of
> congressional intent that federal (and state) courts create
> and administer a comprehensive body of *federal* law for

---

[5] Of course, it also has been recognized that fair representation cases are grounded in federal law and are within the federal question jurisdiction of the district court. *See, e.g.*, *Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363 (7th Cir. 2003) (reviewing plaintiffs' "hybrid" section 301/fair representation action against employer and union under federal law); *Filippo v. Northern Indiana Pub. Serv. Corp., Inc.*, 141 F.3d 744 (7th Cir. 1998) (same); *see also* 2 The Developing Labor Law: The Board, the Courts, and the National Labor Relations Act 2263-67 (Patrick Hardin & John E. Higgins, Jr. eds., 4th ed. 2001 & Supp. 2004).

> the court enforcement of collective bargaining agreements. Under *Vaca*, the NLRA duty of fair representation, for the enforcement of which a federal (and state) court action is authorized, completely preempts state law because of the congressional intent that federal law, developed to further the goals of the NLRA, entirely govern the duties which an NLRA collective bargaining representative owes, by virtue of its position as such, to the workers it represents in that capacity. We cannot conceive that Congress intended complete displacive preemption of the *Avco* variety in the section 301 context, but not in the context of the duty of fair representation arising from a union's status as an exclusive collective bargaining agent under the NLRA.

*Id*. at 1169-70; *accord BIW Deceived*, 132 F.3d at 831. This view is based on the Supreme Court's recognition in *Vaca* of "the unique role played by the duty of fair representation doctrine in the scheme of federal labor laws, and its important relationship to the judicial enforcement of collective bargaining agreements." *Vaca*, 386 U.S. at 188.


**2.**

We may assume for purposes of our decision today that our sister circuits have decided correctly that a union's implied duty of fair representation involving a section 301 contract effects complete preemption. Here, the Union seeks to extend further that preemption. It submits that, like section 301 and the judicially implied duty of fair representation, § 1114 necessitates a body of federal law such that any state-law action that alleges that a union assumed, and later breached, a duty to represent retired bargaining unit members in a Chapter 11 case arises only under federal law.

As such, state law provides no independent source of rights for retired bargaining unit members in situations in which the union undertakes to represent them in bankruptcy proceedings.

We shall begin our inquiry with the text of § 1114. The statute is designed to protect retired workers—both those that are part of a collective bargaining unit and those that are not—by providing them with representation in Chapter 11 cases in which the debtor seeks to modify or terminate retiree benefits.[6] For retired workers who are receiving retiree benefits based on a collective bargaining agreement, the statute designates the labor union that was the signatory of that contract as the presumptive representative, unless it elects not to serve, or if the court, on motion of a party in interest, determines that different representation is appropriate. 11 U.S.C. § 1114(c)(1).[7]

---

[6] The statute defines the term "retiree benefits" as

> payments to any entity or person for the purpose of providing or reimbursing payments for retired employees and their spouses and dependents, for medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death under any plan, fund, or program (through the purchase of insurance or otherwise) maintained or established in whole or in part by the debtor prior to filing a petition commencing a case under this title.

11 U.S.C. § 1114(a).

[7] Section 1114(c) states:

> (c)(1) A labor organization shall be, for purposes of this section, the authorized representative of those persons receiving any retiree benefits covered by any collective bargaining agreement to which that labor organization is
> (continued...)

In cases in which the union elects not to serve as the repre-
sentative, or the court finds the union should not serve, §
1114 provides that the court shall, on motion of a party in
interest, appoint a committee comprised of retired employ-
ees, if the debtor seeks to modify or terminate retiree
benefits or if the court otherwise deems such representation
to be appropriate. *Id*. The commentary to § 1114 recognizes
that a critical feature of the statute is the ability of retirees to
have representation separate from the labor union in a
Chapter 11 case. This is because an inherent conflict of
interest exists between current workers and retired workers,
even when both are covered by the same collective bargain-
ing agreement. "If resources run short and the collective

---

(...continued)

> signatory, unless (A) such labor organization elects not
> to serve as the authorized representative of such persons,
> or (B) the court, upon a motion by any party in interest, after
> notice and hearing, determines that different representation
> of such persons is appropriate.

> (2) In cases where the labor organization referred to in
> paragraph (1) elects not to serve as the authorized repres-
> entative of those persons receiving any retiree benefits
> covered by any collective bargaining agreement to which
> that labor organization is signatory, or in cases where the
> court, pursuant to paragraph (1) finds different representa-
> tion of such persons appropriate, the court, upon a motion by
> any party in interest, and after notice and a hearing, shall
> appoint a committee of retired employees if the debtor seeks
> to modify or not pay the retiree benefits or if the court
> otherwise determines that it is appropriate, from among such
> persons, to serve as the authorized representative of such
> persons under this section.

11 U.S.C. § 1114(c).

bargaining agreement needs to be modified, then greater cuts to retiree benefits will necessarily leave more funds available for current wages." Daniel Keating, *Bankruptcy Code § 1114: Congress' Empty Response to the Retiree Plight*, 67 Am. Bankr. L.J. 17, 33 (1993).

In situations in which no collective bargaining agreement governs, the court shall, on motion of a party in interest, appoint a representative committee of retired employees if the debtor seeks to modify or terminate retiree benefits, or if the court deems it otherwise appropriate. 11 U.S.C. § 1114(d).[8]

Section 1114 further protects retirees in Chapter 11 cases by establishing procedures and standards that must be satisfied before the debtor may unilaterally modify the payment of such benefits. The statute provides that the trustee (which includes a debtor in possession), "shall timely pay and shall not modify any retiree benefits," unless: (1) the court, on motion of the trustee or authorized representative, and after notice and a hearing, orders modification of such payments; or (2) the trustee and the authorized representative agree to modification of

---

[8] Section 1114(d) reads:

(d) The court, upon a motion by any party in interest, and after notice and a hearing, shall appoint a committee of retired employees if the debtor seeks to modify or not pay the retiree benefits or if the court otherwise determines that it is appropriate, to serve as the authorized representative, under this section, of those persons receiving any retiree benefits not covered by a collective bargaining agreement.

11 U.S.C. § 1114(d).

such payments. *Id*. § 1114(e)(1).[9] Prior to the filing of an application seeking to modify retiree benefits, § 1114(f) requires: (1) that the trustee make a proposal to the retirees' authorized representative, which provides for the modifications in the retiree benefits that are necessary to permit the debtor to reorganize and which assures that all creditors, the debtors and all affected parties are treated fairly and equally; (2) that the proposal be based on the most complete and reliable information available at that time; (3) that the trustee provide the authorized representative with the relevant information necessary to evaluate the proposal; and (4) that, between the time the proposal is made and the hearing date, the trustee meet with the authorized representative at reasonable times and confer in good faith in an attempt to reach a mutually satisfactory

---

[9] Section 1114(e)(1) reads:

> Notwithstanding any other provision of this title, the debtor in possession, or the trustee if one has been appointed under the provisions of this chapter (hereinafter in this section "trustee" shall include a debtor in possession), shall timely pay and shall not modify any retiree benefits, except that—
>
>> (A) the court, on motion of the trustee or authorized representative, and after notice and a hearing, may order modification of such payments, pursuant to the provisions of subsections (g) and (h) of this section, or
>>
>> (B) the trustee and the authorized representative of the recipients of those benefits may agree to modification of such payments,
>
> after which such benefits as modified shall continue to be paid by the trustee.

11 U.S.C. § 1114(e)(1).

modification of the retiree benefits. *Id*. § 1114(f)(1)-(2).[10] A bankruptcy court can approve the debtor's motion for modification of retiree benefits only if it finds: (1) that the conditions of § 1114(f) are met; (2) that the authorized representative refused without good cause to accept the trustee's proposal for modification; (3) that all affected parties are treated equally and fairly; and (4) that such modification is favored by a balancing of the equities. *Id*. § 1114(g).[11]

---

[10] Section 1114(f) reads:

(1) Subsequent to filing a petition and prior to filing an application seeking modification of the retiree benefits, the trustee shall—

(A) make a proposal to the authorized representative of the retirees, based on the most complete and reliable information available at the time of such proposal, which provides for those necessary modifications in the retiree benefits that are necessary to permit the reorganization of the debtor and assures that all creditors, the debtor and all of the affected parties are treated fairly and equitably; and

(B) provide, subject to subsection (k)(3), the representative of the retirees with such relevant information as is necessary to evaluate the proposal.

(2) During the period beginning on the date of the making of a proposal provided for in paragraph (1), and ending on the date of the hearing provided for in subsection (k)(1), the trustee shall meet, at reasonable times, with the authorized representative to confer in good faith in attempting to reach mutually satisfactory modifications of such retiree benefits.

11 U.S.C. § (f).

[11] Section 1114(g) states:

(continued...)

With this understanding of § 1114 in mind, we turn to the application of the complete preemption doctrine. Our

---

[11] (...continued)

The court shall enter an order providing for modification in the payment of retiree benefits if the court finds that—

(1) the trustee has, prior to the hearing, made a proposal that fulfills the requirements of subsection (f);

(2) the authorized representative of the retirees has refused to accept such proposal without good cause; and

(3) such modification is necessary to permit the reorganization of the debtor and assures that all creditors, the debtor, and all of the affected parties are treated fairly and equitably, and is clearly favored by the balance of the equities;

except that in no case shall the court enter an order providing for such modification which provides for a modification to a level lower than that proposed by the trustee in the proposal found by the court to have complied with the requirements of this subsection and subsection (f): *Provided, however,* That at any time after an order is entered providing for modification in the payment of retiree benefits, or at any time after an agreement modifying such benefits is made between the trustee and the authorized representative of the recipients of such benefits, the authorized representative may apply to the court for an order increasing those benefits which order shall be granted if the increase in retiree benefits sought is consistent with the standard set forth in paragraph (3): *Provided further,* That neither the trustee nor the authorized representative is precluded from making more than one motion for a modification order governed by this subsection.

11 U.S.C. § 1114(g).

inquiry must bear in mind that "determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system." *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 810 (1986). After careful scrutiny of § 1114's statutory scheme, we are convinced that, for purposes of complete preemption analysis, the analogy the district court drew between a union's role in the § 1114 context and in the section 301 context falters.

The legislative history of § 1114, as well as its operation, reveals that the statute was designed to serve the limited role of providing retirees with representation in bankruptcy proceedings. Prior to the enactment of § 1114, retired workers whose benefits were covered by a union contract faced the risk that the employer-debtor unilaterally would reject the collective bargaining agreement and thereby convert the retired workers' non-pension benefits into a general unsecured claim. *See* Dan Keating, *Good Intentions, Bad Economics: Retiree Insurance Benefits in Bankruptcy*, 43 Vand. L. Rev. 161, 171 (1990). Similarly, retired workers whose benefits were not part of a collective bargaining agreement had no special priority to a company's assets in a Chapter 11 reorganization. *See id.* at 170. If their benefits were vested, the retired workers could file a claim in the bankruptcy proceeding, but that claim was an unsecured claim based on breach of contract. *See id.*

In 1984, Congress enacted § 1113 of the Bankruptcy Code in order to protect the interests of employees of Chapter 11 debtors who were covered by collective bargaining agreements. Under § 1113, a debtor in possession or trustee may not unilaterally reject any provision of a collective bargaining agreement except in accordance with the requirements of the statute. 11 U.S.C. § 1113(a). How-

ever, courts had diverging views as to whether § 1113 extended to retired workers. *See* Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy app. E, at 8-10, 8-13 (15th ed. rev. 2004) ("Collier on Bankruptcy"). The inadequacy of the representation afforded to retired workers during the bankruptcy process gained Congress' attention in July 1986, when LTV Steel Company filed a Chapter 11 petition and announced that it immediately would stop paying health benefits to its 78,000 retired employees. *Id.* at App. Pt. 8-11.

In response to public outcry, Congress enacted stopgap legislation. *See* Daniel Keating, *Bankruptcy Code § 1114: Congress' Empty Response to the Retirees Plight*, 67 Am. Bankr. L.J. 17, 47 (1993) (stating that, when Congress enacted § 1114 "it was obvious that the legislation was purely a reaction to the problems raised in the LTV case" as a "bandaid solution to the problem of unfunded retiree health benefits"). After extending the legislation twice, Congress enacted the Retiree Benefits Bankruptcy Protection Act of 1988, Pub. L. No. 100-334, 102 Stat. 610.

Congress' foremost concern in enacting § 1114 was providing "additional protections for the insurance benefits of retirees" when companies file a Chapter 11 bankruptcy. *See* S. Rep. 100-19 at 683, reprinted in 1988 U.S.S.C.A.N. 683. Numerous statements made by members of Congress on the floor in enacting the statute support this conclusion. For instance, Senator Heinz stated:

> The Congress was also concerned over the treatment of retirees after a company filed for bankruptcy. Once the retirees lost their benefits they were forced by the bankruptcy law to go to the end of the line of creditors and patiently wait for years to get a small cash settlement. While chapter 11 reorganization seemed to work

to protect the interests of the major, and usually se-
cured, creditors, it left the retirees totally exposed
to catastrophic medical losses while bankruptcy lawyers
bickered over the reorganization plan. The retirees had
no way to make their concerns known to the court
during bankruptcy.

. . . .

The bill will protect retirees from unilateral termina-
tion of benefits by a company filing a chapter 11 bank-
ruptcy petition.  Health and life insurance benefits
would be continued throughout the proceedings unless
it was necessary to discontinue them to keep the com-
pany alive.  This bill will also finally give re-
tirees adequate representation in the bankruptcy pro-
ceedings.

134 Cong. Rec. S6823-27, at 6827 (daily ed. May 26, 1988),
*reprinted in* Collier on Bankruptcy app. E, at 8-48. Similarly
Representative Edwards stated:

It is important that we pass this bill in order to give
retirees peace of mind by removing the possibility of
any sudden and unilateral termination of retiree
health benefits. Retired workers are often completely
dependent on these benefits. If such benefits are cut
off—as happened when one major corporation filed
[for] bankruptcy—retirees may not be able to replace
them because of high cost or lack of insurability. Al-
though H.R. 2969, as brought up today, is not per-
fect legislation, it will protect retiree benefits as much as
possible in a bankruptcy.

134 Cong. Rec. H3486-91, at 3488 (daily ed. May 23, 1988),
*reprinted in* Collier on Bankruptcy app. E, at 8-34.

Section 1114's statutory scheme and Congress' expressed intent indicates that the statute was enacted to achieve the very specific and focused objective of protecting retiree benefits from unilateral termination. It permits the bankruptcy court to determine whether retirees ought to be represented by the union or some other entity when their retirement benefits are at stake in a Chapter 11 proceeding. It further sets forth a process which the bankruptcy court must follow in order to ensure that the interest of retirees in their benefits are accorded equal and fair treatment in the shaping of the court's remedial decree. We do not discern in this focused statutory provision any congressional intent, expressed or implied, of a preemptive force so "powerful" as to preempt entirely every aspect of the relationship between the retirees and the entity representing them. *Franchise Tax Bd.*, 463 U.S. at 23-24. Notably, § 1114 does not purport to provide any federal cause of action for inadequate representation. Nor does the legislative history of the section "unambiguously describe[] an intent to treat such actions as 'arising under the laws of the United States in similar fashion to those brought under section 301 of the Labor-Management Relations Act of 1947.'" *Beneficial Nat'l Bank*, 539 U.S. at 8 (quoting *Metro. Life Ins. Co.*, 481 U.S. at 65-66). Specifically, we can discern no intent on the part of Congress in enacting this bankruptcy provision to provide an exclusive federal remedy governing the relationship of the retirees and the entity representing them before the bankruptcy court. *See id.*

As we noted earlier, the Supreme Court pointed out in *Lingle*, 486 U.S. at 403-05, that, in interpreting section 301 of the LMRA, the Court was able to discern quite clearly that Congress, in enacting that provision, not only had created a statutory cause of action for the violation of a labor agreement, *see id.* (citing *Lincoln Mills*, 353 U.S. at 451), but

also had authorized the creation of a substantive common law of collective bargaining agreements, *see id.* (citing *Lucas Flour,* 369 U.S. at 103-04). Thus, in interpreting and applying section 301, a court must apply, necessarily, the federal policy of our national labor laws. *See Lincoln Mills,* 353 U.S. at 456-57. Any action arising under that statute is therefore based on federal law and is removable because it arises under the laws of the United States. *See Avco*, 390 U.S. at 570.

The same policy concerns simply are not at stake in the situation before us today. In deciding an issue under § 1114, the bankruptcy court's focus is not the text of the collective bargaining agreement from which the retirees' benefits are derived, but on ensuring that those rights are treated "fairly and equitably" in fashioning the final plan of reorganization. Although the court has certain responsibilities, outlined in the statute, to select an entity that will represent the interests of the retirees so that the court's objective can be achieved, the statute contains no indication that Congress intended that federal law displace state law with respect to *all* aspects of that relationship.

Although we do not believe that § 1114 carries with it a preemptive force so powerful that it completely preempts the area, we do not rule out the possibility that viable defenses based on federal law, including § 1114, may well preempt otherwise valid state-law based causes of action. This is a matter, however, for the defendants to present to the state courts as a matter of defense.[12]

---

[12] Because we conclude that the district court erred by not remanding to state court the retirees' claims against the Union, we also conclude that the district court properly remanded the claims against the individual defendants.

**Conclusion**

For the foregoing reasons, we reverse the district court's denial of the retirees' motion to remand to state court their claims against the Union. We affirm the district court's remand of the retirees' claims against the individual defendants. The plaintiffs may recover their costs in this court.

AFFIRMED in part;
REVERSED and REMANDED in part

A true Copy:

      Teste:

_____

*Clerk of the United States Court of
Appeals for the Seventh Circuit*